## IMPERIAL LIFE INS. CO. v. MOONEY.

### No. 12542.

Court of Civil Appeals of Texas. Dallas.

Nov. 26, 1938.

Oren Parmeter, of Dallas, for plaintiff in error.

Jas. D. Buster, of Sherman, for defendant in error.

BOND, Chief Justice.

The plaintiff in error, Imperial Life Insurance Company, is a state-wide mutual assessment life insurance company, incorporated under article 4859f, Vernon's Ann. Civ.St.

On October 15, 1935, plaintiff in error issued to James Monroe Mooney a life insurance policy, No. D—337—S, by which it agreed, subject to the provisions thereof, to pay to his wife, Jonnie Ella Mooney, on the death of the insured, the sum of $500. The policy was issued in accordance with a written application made by the insured, and the application, the policy, the by-laws of the company constituted the contract of the parties.

The provisions of the policy and the only ones pertinent here are as follows:

"The insurance herein provided for is granted in consideration of the application therefor which together with every application for reinstatement hereof, is hereby made a part of this Policy, and the payment in advance of the stipulated premium required and the payment of all further premiums on or before the time when due, all in keeping with the requirements and conditions of this Policy.

"No obligation is assumed by the Company prior to the delivery of this Policy and then only upon the condition that the Insured named herein is alive and in good sound health, both mentally and physically, and the required premium stated be fully paid.

"This policy shall not be binding until it has been actually signed by the President and Secretary of the Company and its Corporate seal affixed and actually delivered and accepted by the Applicant and the first premium actually paid. * * *

"A grace period of fifteen days, without interest, will be granted for the payment of every premium after the first, during which period the insurance hereunder shall continue in force. If death occurs within the grace period provided, or during the time any part of the full annual premium is unpaid, then in that event such unpaid premium shall be deducted from the amount payable hereunder.

"* * * the benefits provided in this Policy shall be payable out of the mortuary fund, created as provided by the by-laws of the Company. The maximum liability of the Company under this Policy, on account of the death of the Insured hereunder, shall be the mortuary portion of one assessment from this group plus any mortuary reserves, in no event to exceed the face value of the Policy."

On November 26, 1935, James Monroe Mooney died and, in due time, the defendant in error, Jonnie Ella Mooney, the beneficiary named in the policy, made all necessary preliminary steps within the terms and conditions of the policy to claim and demand payment of all benefits

arising thereunder, and presented proof of death. The Insurance Company refused payment, denying liability.

The beneficiary, as plaintiff, instituted this suit on a petition properly alleging a cause of action on the insurance policy to recover the sum of $500, evidenced in the face of the policy. The Insurance Company, as defendant, answered by general denial, and specially denied that the policy was an effective contract, because of the insured's failure to pay the first premium stipulated by its terms as a condition precedent to the Company's liability; and, if liability ever attached, it was limited to the mortuary portion of one assessment required of a group of policy-holders to which the insured belonged, plus a prorata portion of whatever mortuary reserve was on hand at the time of the death of the insured, not to exceed the face of the policy. The amount of the assessment to pay the benefits under this policy was not stated, and evidently was not made.

The case was submitted to the trial court, without a jury, on a single controversial issue of fact, i. e., whether the first premium due on October 15, 1935, had been paid by the insured; and, on a single proposition of law, i. e., whether the beneficiary is entitled to the maximum liability under the policy, to-wit, $500, or, as contended by defendant, the mortuary portion of one assessment from the policy-holders, plus a prorata portion of the mortuary reserve on hand at the death of the insured. The trial court determined both issues in favor of appellee, accordingly entered judgment for the sum of $500 less the premium of $1.12 due on November 15, 1935, with interest and cost of suit.

The provisions of the policy quoted above obviously limit the liability of the Insurance Company, and to a maximum liability of only one assessment, plus a prorata portion of whatever reserve may be on hand at the death of the insured.

The by-laws of the Insurance Company provide that 60% of all monies received by the Company, other than membership fees, as premium dues, assessments or re-investments, shall be placed in a mortuary fund and be used only for the payment of claims or expenses incident to adjustments of contested claims; and that, "all members shall be required to pay assessments as often as may be necessary to pay benefits and to replenish the mortuary fund." The by-laws further provide that, "The Company's liability under any policy or membership certificate shall be limited to the net mortuary sum collected on an assessment therefor from the members in the group to which the deceased 1st belonged, plus a prorata amount of the mortuary fund on hand at the death of the member, in no event, however, to exceed the face amount of his or her policy or membership certificate."

The uncontroverted evidence shows that the mortuary fund of the Insurance Company in the group to which the deceased belonged had a reserve at the death of James Monroe Mooney of $62.29, and that no assessment had been made against the group requiring them to pay the benefits under the policy here involved, for evident reason, the Insurance Company did not recognize the validity of the contract.

The same question of law is here presented by assignments as were presented to the court below, calling for an interpretation of the contract and a determination of the controversial issue as to whether or not the first premium of October 15, 1935, was ever paid, the insured having died within the grace period of the second premium payment date. While the policy on its face provides for the payment of $500 on the death of the insured, yet, we think, the conditions and provisions of the entire contract, which included the policy, the application, and by-laws, obviously, limits the Company's liability to the mortuary fund created by assessments of the group to which the insured belonged, and to only one assessment of the group members, plus a prorata portion of whatever mortuary reserve is on hand at the death of the insured; and, there having been no assessment made to pay the benefits under this policy and the reserve shown to be only $62.29 at the death of the insured, the Company's liability was limited to a prorata portion of the $62.29 and such portion of the mortuary fund as shall be created by an assessment on the members of the group to which the insured belonged, in no event, to exceed the sum of $500.

This leads to a consideration of the evidence on which the findings of the trial court is based, that the first premium was actually paid: The record shows that, on October 13, 1935, the insured, at Deni-

son, Texas, mailed to the Insurance Company a written application for a policy of insurance, revealing the name of the insured in full, the date of his birth, his age, race or color, height, weight, and occupation, the condition of his health, and many other personal details of his life. The application specifically stated: "Mail notice of future premium payments to J. M. Mooney, address 1127 W. Woodard, Denison, Texas.—Amount being collected with this application is $1.12, which pays the first month of the policy applied for, provided the policy is issued by the Company and if for any reason same is not issued the entire amount collected will be returned by the agent collecting same; * * *." On October 15, 1935, the Insurance Company, on the faith of the insured's application, issued the policy of insurance sued on, attaching thereto the application, and mailed the policy to the insured at the address stated in the application, accompanied with letter reading as follows: "Enclosed you will find your policy No. D—383—S in the amount of $500. It has been a real pleasure for the Imperial Life Insurance Company to issue this policy; it is one of which you may be very proud—and justly so. No better protection can be had than is contained in this policy which is now in your hands. We feel sure that you can and will appreciate the great value of this protection, and are certain you will continue it in force throughout the years to come."

Thus, we think, the Company evidenced the payment of the first premium and obligated itself to "mail notice of future premium", and expressed hope of continuation of the policy throughout the years. Then, again, subsequently, the Insurance Company mailed to the insured a letter in which is stated: "This is to remind you, that the premium described below was due and payable on the date mentioned below. Final notice. You may make payment on any of the following plans: Annually $———, Semi-annually $———, Quarterly $———, Monthly $1.12. Policy No. D—337—S. Premium due November 15, 1935. No agent or collector is authorized to collect this premium. Make all payments direct to the home office." And on the reverse side thereof is stated: "The premium herein described is due and payable on the date stated to the Imperial Life Insurance Company, at its Home Office. Unless the said premium is paid on or before the day it falls due or within the grace period thereafter, the policy referred to herein will become null and void. * * *." As stated above, the insured died within the grace period of the November 15, 1935, premium-payment due date.

Indeed, the evidence introduced by the Insurance Company sharply controverted that of the defendant in error, evidencing the premium of October 15, 1935, was not paid, thus the policy never became an effective contract.

We are of the opinion that the evidence pro and con of the parties to the suit reveal a controversial issue of fact, justifying the findings of the court that the premium of October 15, 1935, was actually paid by the insured to the Company. The judge of the trial court was the trier of the controverted fact and having determined that issue, same is binding on the appellate courts.

In view of the judgment of the court below failing to limit the maximum liability under the policy to the mortuary fund, and no assessment having been made by the Insurance Company of the members of the select group to which the insured belonged, we feel the judgment should be limited to the funds contracted and the cause be reversed with instructions to the trial court only to ascertain and determine the amount of the Company's mortuary reserve, and to exercise process of mandamus, or such like writs, to compel an assessment to be made against the members available to pay the benefits under the policy, in full liquidation thereof. Accordingly, the judgment of the court below is reformed, limiting payment of the benefits under the policy to the amount of such mortuary fund as shall arise from one assessment of the select group of policy-holders of the Company, plus a prorata portion of the mortuary reserve on hand at the death of the insured; and, the case remanded to the trial court only to ascertain, in such manner available, the maximum amount of the mortuary fund for the liquidation of the judgment. The amount of the mortuary fund being uncertain, and the cause being reversed only to ascertain the amount available to pay the benefits under the policy, the cost on appeal is taxed against appellant.

Affirmed in part; reversed and remanded in part, with instructions.